# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA FIELDS and REGINALD FIELDS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 16 C 1961 ) ) Judge John Z. Lee |
| NIKITA COLLINS JACKSON and ABSOLUTELY EDIBLE CAKES & CATERING, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Patricia and Reginald Fields ("the Fields") have sued Defendants Nikita Jackson ("Jackson") and Absolutely Edible Cakes & Catering, LLC ("Absolutely Edible"), alleging claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendants have filed a motion for summary judgment. For the reasons provided herein, the motion is granted in part and denied in part.

## Factual Background

The following facts are not in material dispute except where otherwise noted. The Fields reside in Lake County, Illinois. Defs.' LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 31. Jackson resides in Rowlett, Texas. *Id.* ¶ 2. She is the sole member of Absolutely Edible, a Texas limited liability company that offers catering services. *See id.* ¶¶ 3–4.

On February 24, 2015, the Fields hired Jackson and Absolutely Edible to cater their wedding reception in Illinois on July 18, 2015. *See id.* ¶¶ 7–8. According to the Fields, Jackson submitted a proposal to cater the reception for $8,027.89. Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 6, ECF No. 38. The Fields then paid Jackson $5,000 as a down payment toward her services. *Id.* ¶ 7;

Defs.' LR 56.1(a)(3) Stmt. ¶ 10. The Fields claim (and Defendants deny) that they later wired an additional $1,500 to Jackson for these services. Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 7; Defs.' Resp. Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 7, ECF No. 41.

After the wedding reception, according to the Fields, Jackson presented them with an invoice billing them for extra services costing $7,021.71 more than they had previously agreed upon. *See* Pls.' LR 56.1(b)(3)(C) ¶ 8. Patricia Fields ("Patricia") challenged the invoice, not only because of these additional charges, but also on the ground that the invoice failed to account for $3,000 of payments that the Fields had already made. *Id.* ¶ 9.

Sometime around the date of the wedding, Patricia became pregnant. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 35, 40. On September 3, 2015, however, Patricia miscarried. *Id.* ¶ 41. According to Patricia's obstetrician, the miscarriage occurred due to a hormonal imbalance. *Id.* ¶¶ 41–42. The obstetrician attests that undue stress could not have contributed to the miscarriage. *Id.* ¶ 43.

On September 18, 2015, Jackson began making social media posts on the Internet about the Fields' failure to pay in full for her catering services. *Id.* ¶¶ 11–14.[1] In one post on YouTube, for example, Jackson uploaded a video about the Fields and wrote in the video caption: "Patricia Fields is a con artist. She stole from me by writing checks totalling $4500." *See* Pls.' LR 56.1(b)(3)(C) Stmt., Ex. C, at 1. In another post, Jackson wrote: "Bitch Patricia

---

[1] The Fields neither admit nor deny that Jackson began posting on the Internet about Patricia starting on September 18, 2015. *See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 13–14, ECF No. 38. This fact is therefore deemed admitted for purposes of Defendants' summary judgment motion. *See* LR 56.1(b)(3) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Fields [d]idn't [h]ave my money. BRIDE stole from me. $4500 in nsf checks."[2] *Id.* at 2. The Fields characterize Jackson's Internet posts as accusing Patricia of committing criminal acts. Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 11.

Starting around December 2015, Patricia became an employee at PM Solutions. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 17; Pls.' LR 56.1(b)(3)(C) Stmt., Ex. 1, Patricia Aff. ¶ 6. As an employee of PM Solutions, Patricia was assigned to perform consulting work for a company called CF Industries. Defs.' LR 56.1(a)(3) Stmt. ¶ 17. According to Defendants, Patricia was assigned to work for CF Industries from January 4, 2016, until February 12, 2016, at which time she was discharged from her employment at PM Solutions due to a lack of work. *Id.* ¶¶ 18, 20. According to the Fields, however, an upper-level employee told Patricia that she was discharged not because of a lack of work, but instead because of Jackson's Internet posts about the Fields' failure to pay for her catering services. *See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 18, 20 (citing Patricia Aff. ¶ 6).

Additionally, in early 2016, Patricia was being considered for a position at the Federal Reserve Bank of Chicago. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 23. Her application was eventually declined. *Id.* ¶ 30. John Bouton, a recruiter at the Federal Reserve Bank, testified that he was not aware of Jackson's Internet posts, although he conceded that he was not the final decision-maker and others at the Federal Reserve thought that Patricia was not a good "fit" for the team, even though she satisfied the job requirements. *See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 30.

On February 23, 2016, Patricia was arrested and charged with theft of services based upon her failure to pay Jackson. *Id.* ¶ 15; Defs.' LR 56.1(a)(3) Stmt. ¶ 15.[3] The charges were

---

[2] The parties do not explain the meaning of the term "nsf" in this post. The Court assumes that the term is intended as an abbreviation for "not sufficient funds." *See Black's Law Dictionary* (10th ed. 2014).

[3] Defendants assert in their statement of facts that Patricia was instead arrested and charged on July 18, 2015. Defs.' LR 56.1(a)(3) Stmt. ¶ 15. The charging instrument cited in support, however, shows that Patricia was charged on February 23, 2016. *Id.*, Ex. I, Lake County, Illinois Theft of Services Complaint.

3

dismissed with prejudice on July 5, 2016. Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 3. In the meantime, ABC 7 News published news reports of Patricia's arrest. Defs.' LR 56.1(a)(3) Stmt. ¶ 16.

Based upon these events, the Fields have sued Defendants for intentional defamation (Count I), negligent defamation (Count II), intentional infliction of emotional distress (Count III), and negligent infliction of emotional distress (Count IV). Defendants have moved for summary judgment with regard to all claims.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

I.  **Counts I and II: Defamation**

First, Defendants argue that they are entitled to summary judgment with regard to the Fields' defamation claims because the Fields have failed to present evidence that they were harmed by Jackson's allegedly defamatory statements. In the alternative, Defendants contend

that the claims fail because Jackson's statements were conditionally privileged. For the following reasons, the Court rejects both arguments and denies Defendants' motion for summary judgment as to Counts I and II.

### A. Evidence of Damages

Under Illinois law, "[a] statement is defamatory if it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). There are two types of defamation: defamation *per se* and defamation *per quod*. *Id.* "A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face." *Id.*; *see also Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006). In Illinois, "statements imputing the commission of a crime" are defamatory *per se*. *Tuite*, 866 N.E.2d at 121. In an action for defamation *per se*, damage to the plaintiff's reputation is presumed. *Id.*

By contrast, "[s]tatements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992). In an action for defamation *per quod*, damage to the plaintiff's reputation is not presumed, and the plaintiff therefore must prove special damages—that is, a pecuniary loss—in order to recover. *Tuite*, 866 N.E.2d at 121; *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1221 (Ill. 1996). Whether a statement is defamatory *per se* or *per quod* is a question of law to be decided by the Court. *Costello v. Capital Cities Commc'ns, Inc.*, 532 N.E.2d 790, 795 (Ill. 1988).

Defendants devote much of their briefing to the issue of whether the Fields have offered sufficient proof of special damages to present their defamation claims before a jury. As the Fields point out in their response, however, they need not offer proof of special damages in this

5

case, because the allegedly defamatory statements at issue are defamatory *per se*. On its face, Jackson's statement that "Patricia . . . stole from me" imputes the commission of a crime—namely, theft. *See* Pls.' LR 56.1(b)(3)(C) Stmt., Ex. C, at 1. Jackson also imputed to Patricia the crimes of theft and writing bad checks in her statement: "Bitch Patricia Fields [d]idn't [h]ave my money. BRIDE stole from me. $4500 in nsf checks." *Id.* at 2. Such statements are the archetype of defamation *per se*. *See, e.g.*, *Gardner v. Senior Living Sys., Inc.*, 731 N.E.2d 350, 354–55 (Ill. App. Ct. 2000) (holding that statement accusing plaintiff of committing theft was defamation *per se*); *Lowe v. Rockford Newspaper, Inc.*, 534 N.E.2d 549, 553 (Ill. App. Ct. 1989) (holding that statement implying that plaintiff was a thief was defamation *per se*). Because these statements are defamatory *per se*, the Fields need not offer evidence of special damages in order to prove their defamation claims to a jury. *Tuite*, 866 N.E.2d at 121. The Court therefore rejects Defendants' argument that they are entitled to summary judgment on these claims due to insufficient evidence of damages.[4]

B. **Conditional Privilege**

Next, Defendants argue that they are entitled to summary judgment because Jackson's statements were protected by a conditional privilege. Under Illinois law, the doctrine of

---

[4] Based on the parties' briefs, it is unclear whether the Fields intend to offer evidence of additional defamatory statements to the jury apart from the statements discussed above. Without information about such other, additional statements, the Court cannot determine whether those statements would qualify as defamatory *per se*. Even if these statements were only defamatory *per quod*, however, the Fields would still be entitled to present those statements to a jury as a basis for their defamation claims, because they have created a genuine dispute of fact as to whether Jackson's statements caused them special damages. For example, they point to facts from which a reasonable jury could infer that Patricia was fired from her position at PM Solutions as a result of Jackson's Internet posts. *See* Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 19 (citing Patricia Aff. ¶ 6). And, although Defendants cite to the testimony of John Bouton, a recruiter for the Federal Reserve Bank of Chicago, that he was unaware of the internet posts when Patricia was denied a job, Bouton also stated that Patricia had met the job requirements and that the managers at the Federal Reserve did not feel that she was a good "fit" for the team. *See* Pls.' LR 56.1(b)(3) Stmt. ¶ 30. Such facts, when viewed in the light most favorable to Defendants, create genuine disputes that preclude summary judgment. *See McCann*, 622 F.3d at 752.

conditional or qualified privilege protects certain communications by increasing a defamation plaintiff's burden of proof. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Where a qualified privilege exists, the plaintiff must prove that the defendant made the allegedly defamatory statements with knowledge or reckless disregard of the statements' falsity. *Id.* The qualified privilege doctrine is based upon "'the policy of protecting honest communications of misinformation' in certain favored circumstances in order to facilitate the availability of correct information." *Jones v. W. & S. Life Ins. Co.*, 91 F.3d 1032, 1035 (7th Cir. 1996) (quoting *Kuwik*, 619 N.E.2d at 133). Whether a statement is protected by a qualified privilege is a question of law. *Solaia*, 852 N.E.2d at 842.

Following the Restatement (Second) of Torts, Illinois courts have identified three categories of circumstances in which a qualified privilege may exist: "(1) situations in which some interest of the person who publishes the defamatory matter is involved; (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved; and (3) situations in which a recognized interest of the public is concerned." *Anderson v. Beach*, 897 N.E.2d 361, 367 (Ill. App. Ct. 2008) (quoting *Kuwik*, 619 N.E.2d at 135) (alterations omitted). "In determining whether a qualified privilege exists, a court is to consider only the general type of communication involved, not the particular communication involved in the case *sub judice*." *Naleway v. Agnich*, 897 N.E.2d 902, 909 (Ill. App. Ct. 2008).

Defendants argue, among other things, that Jackson's allegedly defamatory statements about Patricia fall within the third qualified-privilege category because the statements advanced an interest of public concern. On this point, Defendants are correct. Illinois courts have held that statements imputing the commission of a crime concern the public's interest in "the prevention of crime and the apprehension of criminals" and thus are covered by a qualified

privilege. *Gist v. Macon Cty. Sheriff's Dep't*, 671 N.E.2d 1154, 1159 (Ill. App. Ct. 1996) (quoting Restatement (Second) of Torts § 598, comment d, at 282–83 (1977)). Jackson's statements accusing Patricia of committing crimes by stealing from her and writing bad checks fall squarely within this category.

The fact that Jackson's statements were covered by a qualified privilege, however, does not entitle Defendants to summary judgment on the Fields' defamation claims. When a defendant demonstrates that her statements are covered by a qualified privilege, a defamation plaintiff can still recover on her claims by showing that the defendant abused this privilege. *Id.* (citing *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1234 (Ill. App. Ct. 1995)). A plaintiff can show abuse of a qualified privilege by proving "any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Kuwik*, 619 N.E.2d at 136; *see also Anderson*, 897 N.E.2d at 367–68 ("A privileged communication loses protection if the publisher: (1) knew it was false or recklessly disregarded its falsity; (2) published it for an improper purpose; (3) published it to people not reasonably believed to be necessary recipients; or (4) did not reasonably believe that publication was necessary to accomplish its privileged purpose." (citing Restatement (Second) of Torts § 599, comment a, at 286)). Whether the defendant abused a qualified privilege is a question of fact for the jury to decide. *Anderson*, 897 N.E.2d at 369 (citing *Kuwik*, 619 N.E.2d at 134).

Here, the Fields have presented a genuine dispute of material fact as to whether Jackson abused her qualified privilege. In particular, there is a genuine dispute as to whether Jackson published her statements to people who were not reasonably believed to be necessary recipients of the statements, given that Jackson published her statements on the Internet, where they are

broadly accessible to the general public. *See* Pls.' LR 56.1(b)(3)(C) Stmt., Ex. C, at 1–2. If a jury were to find based on this fact and the surrounding circumstances that Jackson abused the qualified privilege, then the privilege would not apply. *See Anderson*, 897 N.E.2d at 369.

Furthermore, even if the jury were to find that Jackson did not abuse the qualified privilege, the privilege still would not allow Defendants to avoid liability altogether. Instead, the Fields could still prevail on their defamation claims by proving to the jury that Jackson made her statements with a subjective, reckless disregard as to their truth or falsity. *See Kuwik*, 619 N.E.2d at 133. Given these factual issues, Defendants' motion for summary judgment as to the Fields' defamation claims is denied.

## II. Count III: Intentional Infliction of Emotional Distress

Next, Defendants move for summary judgment with regard to the Fields' claim for intentional infliction of emotional distress. In Illinois, "[t]he tort of intentional infliction of emotional distress requires proof of four elements: (1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767–68 (Ill. 1976)); *accord Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). Defendants take issue with only the first of these elements, arguing that Jackson's statements, on which the Fields' claim is based, were not extreme and outrageous.

In an action for intentional infliction of emotional distress, "[w]hether particular conduct is extreme and outrageous is treated as a question of law." *Ulm v. Mem'l Med. Ctr.*, 964 N.E.2d 632, 641 (Ill. App. Ct. 2012). In general, conduct is extreme and outrageous only if it goes "beyond all possible bounds of decency, [so as] to be regarded as atrocious[ ] and utterly

intolerable in a civilized community." *Schweihs*, 77 N.E.3d at 63. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient, *id.*, and actions may fall short of extreme and outrageous conduct even if they cause "fright, horror, grief, shame, humiliation, [or] worry," *Tabora v. Gottlieb Mem'l Hosp.*, 664 N.E.2d 267, 275 (Ill. App. Ct. 1996) (quoting *Pub. Fin.*, 360 N.E.2d at 767).

As the Seventh Circuit has recognized, Illinois courts have held that a plaintiff cannot prove a claim for intentional infliction of emotional distress based upon a defendant's defamatory statements, because such statements generally do not clear the high hurdle for extreme and outrageous conduct. *Cook v. Winfrey*, 141 F.3d 322, 331 (7th Cir. 1998) (collecting cases); *e.g.*, *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991) (dismissing claim for intentional infliction of emotional distress based upon allegations that defendant defamed plaintiff by falsely telling the police that plaintiff had harassed, assaulted, and threatened a coworker); *see also Chang Hyun Moon v. Kang Jun Liu*, 44 N.E.3d 1134, 1143 (Ill. App. Ct.) (describing the requirement of extreme and outrageous conduct as a "high bar" and collecting sources in support).

In support of their claim for intentional infliction of emotional distress, the Fields rely entirely upon the same Internet posts and statements that form the basis of their defamation claims. Although these statements may have been offensive or distressing to the Fields, such defamatory statements are not so extreme and outrageous as to sustain a claim for intentional infliction of emotional distress. *See Cook*, 141 F.3d at 331. The Fields have offered no case law or arguments to the contrary. Accordingly, Defendants' motion for summary judgment as to Count III is granted.

### III. Count IV: Negligent Infliction of Emotional Distress

Finally, Defendants move for summary judgment as to the Fields' claim for negligent infliction of emotional distress on the ground that the Fields have failed to show evidence of a physical impact. Under Illinois law, a plaintiff can prevail on a claim for negligent infliction of emotional distress under the theory that she was either a "direct victim" or a "bystander." *See, e.g.*, *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). To prevail as a "direct victim," the plaintiff must show that she suffered a physical impact or injury that was contemporaneous with the defendant's negligent conduct. *Schweihs*, 77 N.E.3d at 59. She need not, however, show that she suffered physical symptoms as a result of the emotional distress caused by this physical impact. *Id.* at 61 (citing *Corgan v. Muehling*, 574 N.E.2d 602, 609 (Ill. 1991)). To prevail as a "bystander," the plaintiff must show that she was in "such proximity to the accident in which [a] direct victim was physically injured that there was a high risk to [her] of physical impact." *Id.* at 58 (quoting *Rickey v. Chi. Transit Auth.*, 457 N.E.2d 1, 5 (Ill. 1983)).

As with their claim for intentional infliction of emotional distress, the Fields' claim for negligent infliction of emotional distress is premised upon Jackson's defamatory Internet posts and statements. The Fields have failed to allege, let alone offer evidence, that they either suffered a physical impact that was contemporaneous with these statements or that they were bystanders in proximity to an accident in which a direct victim was physically injured.[5] In fact, in responding to Defendants' motion for summary judgment, the Fields have made no arguments

---

[5] In Count IV of their complaint, the Fields allege that Jackson's statements caused Patricia so much emotional distress that she suffered a miscarriage and has since required ongoing hospitalization and treatment. Am. Compl. ¶ 46, ECF No. 8. This allegation misses the mark. As explained above, after-the-fact manifestations of emotional distress are neither necessary nor sufficient to prove a claim for negligent infliction of emotional distress. *Schweihs*, 77 N.E.3d at 59, 61. And, in any event, the Fields have not supported this allegation with any evidence. Instead, the uncontroverted evidence shows that Patricia's miscarriage occurred on September 3, 2015, approximately two weeks *before* Jackson made her first Internet post about the Fields. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 41–43.

whatsoever in support of this claim. For these reasons, Defendants are entitled to summary judgment with respect to the Fields' claim for negligent infliction of emotional distress.

## **Conclusion**

For the reasons stated herein, Defendants' motion for summary judgment [30] is denied with regard to the Fields' claims for defamation (Counts I and II) and granted with regard to the Fields' claims for intentional infliction of emotional distress (Count III) and negligent infliction of emotional distress (Count IV). A status hearing will be held on October 3 at 9:00 AM, at which time the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**                    **ENTERED   9/19/17**

_____

**John Z. Lee**
**United States District Judge**